UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOM WENCKAITIS and ANTHONY MARSHALL, <br><br> Plaintiffs, <br><br> v. <br><br> SPECIALTY CONTRACTORS INC., and JOHN O'HARA, owner of Specialty Contractors, Inc., <br><br> Defendants. | ) <br> ) <br> ) NO. 20-cv-03743 <br> ) <br> ) <br> ) Hon. Sharon Johnson Coleman <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES**

Plaintiffs Tom Wenckaitis and Anthony Marshall, ("Plaintiffs"), by their attorneys, pursuant to the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), Illinois Employee Classification Act ("IECA"), and Illinois Wage Payment Collection Act ("IWPCA"), respectfully request that the Court enter an order awarding Plaintiffs the attorneys' fees, costs, and expenses that they are entitled to recover under the relevant statutes.

**I. Introduction**

After a two-day bench trial, Plaintiffs proved that Defendants Specialty Contractors Inc. ("Specialty") and John O'Hara, the owner of Specialty Contractors Inc. (together, "Defendants") misclassified them as independent contractors in violation of the IECA. 820 ILCS 185/20. In addition, Plaintiffs proved that Defendants failed to pay them overtime premium pay for hours worked over 40 in a workweek in violation of the FLSA and IMWL. 29 U.S.C. § 207; 820 ILCS 105/4a. Additionally, Plaintiffs proved that Defendants violated their rights under the IWPCA by making deductions from their wages without written authorization at the time of the deduction. 820 ILCS 115/9. As a result, the Court awarded Plaintiffs over $80,000 in wages and penalties.

ECF No. 86.

Plaintiffs attempted to resolve this dispute without prolonged litigation. On October 15, 2020, Plaintiffs' attorney wrote Defense counsel a letter advising Defendants that they had violated the wage and hour laws and that they were liable to Plaintiffs under the four statutes cited above. Ex. 1. Plaintiffs initially asked Defendants to pay them $40,000 plus $12,000 in attorneys' fees. *Id.* Plaintiffs' letter reminded Defendants that they had violated fee-shifting statutes and that additional litigation would prove very costly to Defendants if they lost. *Id.* Defendants responded with a letter offering to settle for no money at all. Ex. 2. A few months later, Defendants made offers of judgment to the two Plaintiffs for $500 and $200, inclusive of attorneys' fees. ECF 18, 25.

Defendants' decision not to make a reasonable settlement offer in late 2020 has turned out to be a gross miscalculation. Instead of writing Plaintiffs a check for $40,000, today the Defendants face an $80,000 judgment, plus liability for hundreds of thousands of dollars in attorneys' fees and costs.

Consistent with their response to Plaintiffs' October 2020 letter, once suit was filed, the Defendants continued their aggressive stance. They litigated in a resource-intensive manner: engaging in substantial written and oral discovery (and disclosing three witnesses who had to be deposed). They also chose to stonewall basic discovery (necessitating a motion to compel), and they disclosed late witnesses, requiring a motion to strike. Now that Defendants lost at trial, they have also filed a motion to reconsider and opposed a motion for turnover of funds. ECF No. 94; 107. While it was certainly the Defendants' prerogative to litigate the case aggressively and until the end, the Defendants are now equally obligated to pay the price for that strategy. *See Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) ("The government cannot litigate tenaciously and then

be heard to complain about the time necessarily spent by the plaintiff in response."). Having lost, the Defendants are now liable for both the Court-awarded damages and Plaintiffs' reasonable attorneys' fees and litigation expenses.

## II.     Procedural Background

Plaintiffs filed their lawsuit on June 25, 2020. Defendants filed their answer on January 6, 2021. ECF No. 14. Though the answer admitted key allegations of the Plaintiffs' Complaint, including that "Plaintiffs generally worked under the direction and control of Specialty Contractors, Inc.", *id.* ¶ 13, Defendants chose to dig in and continue fighting.

On January 14, 2021, Defendants served extensive discovery on Plaintiffs, asking them to produce, among other things, tax returns for a six-year period, all documents related to work for any employer or contractor over a six-year period, all documents showing all work-related expenses for a six-year period, and all text messages and e-mails related to work at Specialty Contractors. Ex. 3 (Defendants' Discovery Requests).

On January 25, 2021, Plaintiffs served written discovery requests on Defendants.

On January 27, 2021, Plaintiff Andrew Johnson accepted a Rule 68 offer of judgment, ending his participation in the case. ECF No. 23.

On March 19, 2021, Wenckaitis and Marshall served responses to Defendants' discovery requests along with responsive documents. On April 7, 2021, Defendants served their responses to Defendants' discovery requests.

After meeting and conferring with Defendants about discovery deficiencies, Plaintiffs were forced to file a motion to compel on April 27, 2021. ECF No. 35. The motion sought production of five categories of discovery, which Defendants unreasonably refused to provide. At the motion hearing, the Defendants responded to the motion to compel by informing the Court

3

that it would agree to produce the five categories of information. ECF No. 38. Defendants delayed in producing the additional information, requiring proceedings before Magistrate Judge Jantz. ECF Nos. 38 & 39. On May 25, 2021, Judge Jantz ordered Defendants to produce the outstanding discovery on a set timeline. ECF. No. 43.

Once Defendants finally produced the outstanding discovery that they were required to produce, the parties proceeded with depositions. Defendants deposed the two Plaintiffs, and Plaintiffs deposed two witnesses identified by Defendants – John O'Hara and Kristen Lyons.

On the day that fact discovery closed, Defendants amended their Rule 26(a)(1) disclosures to add two new witnesses – Anthony O'Hara and Bernard Arrambidez. This required Plaintiffs to file a motion to strike the untimely disclosed witnesses. ECF No. 58. Ultimately, the Court allowed the new witnesses, but required Defendants to produce documents related to the witnesses and to allow Plaintiffs to depose them. On December 16, 2021, Plaintiffs deposed Anthony O'Hara.[1]

With discovery closed, the parties began trial preparations. Plaintiffs filed a comprehensive twenty-page trial brief laying out their factual and legal claims and citing all of the relevant record evidence. ECF No. 77. The brief explained why the Defendants ultimately would be held liable for their violations of the FLSA, IMWL, IECA, and IWPCA. *Id.* Plaintiffs also filed a detailed pretrial order, ECF No. 70, and proposed findings of fact and conclusions of law that cited to the record evidence. ECF No. 72. Defendants filed no trial brief. Their proposed findings of fact and conclusions of law were a mere four pages long and cited none of the record evidence. ECF No. 69 at 3-7.

The parties tried the case to the Court on April 6 and 7, 2022. On April 18, 2022, the

---

[1] Arrambidez lives in Texas, and Plaintiffs were unable to serve him with a subpoena.

parties filed post-trial briefs. ECF Nos. 84-85.

On July 11, 2023, the Court entered its Memorandum Opinion and Order, ruling in favor of Plaintiffs on all counts. ECF No. 86.

On August 7, 2023, Defendants filed a Rule 59 motion to alter or amend the judgment. ECF No. 94. On September 18, 2023, Plaintiffs filed a response to Defendants' Rule 59 motion. ECF No. 114.

In the ninety days since the Court entered judgment in Plaintiffs' favor, Plaintiffs have engaged in the Local Rule 54.3 process to narrow issues relating to their petition for attorneys' fees. That process has required them to exercise billing judgment to reduce or delete time unreasonably expended on the case, meet and confer with Defendants' counsel about objections, and compile evidence in support of Plaintiffs' hourly rates. The Parties' Joint Local Rule 54.3 Statement is attached as Exhibit 4.

The parties have also had to litigate issues surrounding Plaintiffs' citations to discover assets. ECF Nos. 101, 107 & 112.

### III. The Legal Standard For Awarding Attorneys' Fees.

In fee shifting cases, the starting point for awarding attorney's fees to a prevailing party is determining the "lodestar," meaning "the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The case law offers guidance for determining both rates and hours. With regard to rates, the presumptively appropriate rate for court-awarded fees is the hourly rate at which an attorney bills and is compensated by paying clients is. *See Porter*, 2003 WL 24045394 at * 3 ("An appropriate hourly rate is generally dependent upon the actual hourly rate the attorney charges . . . ."). In addition, the court may rely on previous court-awarded fees to the same attorney or others of

5

comparable qualifications, skills and experience. *See Lowe v. Nat'l Sheet Metal of Ill.*, No. 1988CN2618, 1995 WL 853272, *4 (Oct. 30, 1995).

With regard to hours worked, absent clear evidence that there was overstaffing or clearly excessive hours, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Civil rights "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Id.*

Here, Plaintiffs' Counsel ask the Court to award fees at the following rates and hours.

| Name | Rate | Hours | Amount |
| --- | --- | --- | --- |
| Chris Wilmes | $520 | 190.80 | $99,216.00 |
| Emily Brown | $400 | 509.20 | $203,680.00 |
| Ben Goldberg (paralegal) | $215 | 33.4 | $7,181 |
| Kassandra Perez (paralegal) | $215 | 47.2 | $10,148 |

These hours are reasonable given the amount of discovery and given that the case went to trial, and the Court should award all hours requested.

## II. Plaintiffs' Attorneys' Standard Billing Rates.

In this case, Christopher Wilmes and Emily Brown, the primary attorneys who worked on this case, request hourly rates of $520 and $400 per hour, respectively. These represent Mr. Wilmes' and Ms. Brown's 2023 standard billing rates, actually charged and collected from paying clients. Ex. 5 ¶ 9 (Wilmes Declaration); Ex. 6 ¶ 9 (Brown Declaration); Ex. 7 (Redacted Fee Invoices). These rates are also substantiated by affidavit of Marni Willenson, attached hereto

as Exhibit 8, attesting to the prevailing rates in the Chicago community for wage and hour attorneys. Finally, the rates are substantiated by other court rulings awarding fees to other lawyers of comparable experience, qualifications, and skill.

### A. Christopher Wilmes' Established Market Rate of $520 Per Hour Is Reasonable.

Mr. Wilmes graduated from Northwestern University School of Law in 2005, *cum laude* and Order of the Coif, and he served as an Editor of the *Northwestern Law Review*. *Id*. ¶ 3. After law school, he completed one-year clerkships with the Honorable Matthew F. Kennelly of the United States District Court for the Northern District of Illinois and with the Honorable Joel M. Flaum of the Seventh Circuit Court of Appeals. *Id*. ¶¶ 5-6. Mr. Wilmes then spent two years working for the Legal Assistance Foundation of Metropolitan Chicago as a Skadden Public Interest Fellow. *Id*. ¶ 7. In 2009, Mr. Wilmes joined Hughes Socol Piers Resnick & Dym, where he has remained ever since. *Id*. ¶ 4.

When it comes to determining a reasonable hourly rate used for a fee petition, "[t]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999); "The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Id.* at 555 (internal quotation omitted); *see also Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (same). If the fee applicant establishes his or her market rate, "the burden is upon the defendant to present evidence establishing a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996).

At $520 an hour, Mr. Wilmes' requested rate is the same rate at which he billed and was

paid by hourly clients for work in 2023. *Id.* ¶ 9. Mr. Wilmes has produced several redacted invoices showing that he charged and collected $520 per hour from paying clients in employment matters. Ex. 7. Further confirming the rate is reasonable, Judge Seeger just awarded Mr. Wilmes fees based on a $520 per hour rate two months ago. See *Barber v. Beverly Freight, Inc.*, No. 22 CV 6920 (N.D. Ill. May 8, 2023) (ECF No. 21) (Motion For Default seeking payment of fees at $520 per hour); (ECF No. 29) (Minute Entry Awarding All Relief Sought in Motion). Additionally, this Court awarded Mr. Wilmes $450 per hour in 2020. *See Gunn v. Stevens Security, Inc.*, No. 17-CV-6314 (N.D. Ill. Mar. 9, 2020) (ECF No. 232) (Memorandum Opinion and Order awarding Mr. Wilmes fees at a rate of $450 per hour).

      The $520 per hour rate also is well within the range and, indeed, below prevailing market rates charged by and awarded by courts to attorneys with comparable qualifications, skill and experience litigating other civil rights and employment cases., particularly when accounting for inflation. *See Mullen v. GLV, Inc.*, No. 18 C 1465, 2022 WL 4534789, at *6 (N.D. Ill. Sept. 28, 2022) ($675 per hour to a lawyer with 13 years of experience); *Bainter v. Akram Invs., LLC*, No. 17 C 7064, 2018 WL 4943884, at *4 (N.D. Ill. Oct. 9, 2018) ($550 per hour to Maureen Salas, who has been authorized to practice since 2006)[2]; *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) ($500 per hour to Maureen Salas, who has been authorized to practice since 2006); *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017) ($550 per hour to Maureen Salas, who has been authorized to practice since 2006); *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (awarding $450 to $600 to partners in a 2015 fee ruling).

---

[2] Maureen Salas' admission date is publicly available on the Illinois ARDC website.

8

### B. Emily Brown's Established Market Rate of $400 Per Hour Is Reasonable

Emily Brown graduated from the University of Michigan Law School, *cum laude*, in 2014. After law school, she worked for two years at Business and Professional People for the Public Interest (BPI) as a Polikoff-Gautreaux fellow. She then worked for one year as a law clerk to the Hon. Milton Shadur. She has been an associate attorney at Hughes Socol since 2019.

Ms. Brown has charged multiple clients $400 per hour as reflected in the attached redacted client invoices. Ex. 7. Again, "[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Spegon*, 175 F.3d 555. See also *Hangzhou Aoshuang E-Com. Co. v. 008Fashion*, 336 F.R.D. 154, 160 (N.D. Ill. 2020) ("Plaintiff's counsel supports the rates charged – $325 and $400 per hour – with invoices submitted to clients for similar work. The Seventh Circuit generally regards this as the best evidence of the market rate for such work.").

Court decisions also make clear that $400 per hour is a more than reasonable market rate for an attorney who graduated from law school in 2014. *Barnes v. Aryzta, LLC*, No. 17-CV-7358, 2019 WL 277716, at *2 (N.D. Ill. Jan. 22, 2019) (awarding $375 per hour to Eli Wade-Scott, a lawyer with four years of experience); *Bainter*, No. 17 C 7064, 2018 WL 4943884, at *4 ($430 per hour to Zachary Flowerree, who was admitted to practice in 2011); *Soto*, 2018 WL 1875296, at *1 ($430 per hour to Zachary Flowerree, who was admitted to practice in 2011, and $400 per hour to Sarah Arendt, who was admitted to practice in 2012);

The hourly rates that Defendants suggest for Plaintiffs counsel's work ($215 per hour) are unmoored from reality. Defendants can cite no recent case in which high-level employment lawyers, like Mr. Wilmes and Ms. Brown, with fifteen and nine years of experience, respectively, were awarded less than $300 per hour. The fact that Defense counsel agreed to

represent his client at rock-bottom hourly rates (that are far below the market) is of no significance. *See Cent. States, Se. & Sw. Areas Pension Fund v. Event Prods., Inc.*, No. 21 C 5695, 2023 WL 3763543, at *8 (N.D. Ill. June 1, 2023) ("It is neither necessary nor appropriate to substitute Central States' own counsel's hourly rate for that of the attorneys Event Productions willingly retained for this litigation."). In the end, Mr. Wilmes and Ms. Brown charge and collect $520 per hour and $400 per hour from paying clients, and those rates are therefore presumptively reasonable. *Spegon*, 175 F.3d 555. This is true even if Defense Counsel cannot or chooses not to charge his clients the same hourly rate.

### III. The Proposed Paralegal Rate Is Reasonable

Next, Plaintiffs seek to recover $215 per hour for paralegal work on the case. Again, this is the hourly rate that Plaintiffs' counsel charges its hourly paying clients. Ex. 7. It is presumptively reasonable.

### IV. The Number of Hours are Reasonable.

Once the Court determines the reasonable hourly rates for attorneys who prevail in a fee-shifting case, the next step is to determine the hours "reasonably expended" on the case. *See Hensley*, 461 U.S. at 333. This case has been hard fought and continued for three years. Given this, the 700 attorney hours and 80.6 paralegal hours that Plaintiffs' attorneys and paralegals have spent on this case is neither excessive nor surprising. The hours are fully documented and do not reflect overstaffing. Ex. 9. Approximately 70% of the attorney hours were performed by one associate-level lawyer, Ms. Brown.

Defendants predictably nit-pick a number of time entries in Plaintiffs' billing records as unreasonable, but their contentions are baseless. Having lost this case on the merits, Defendants are in a poor position to second-guess the amount of work that was necessary to obtain a

favorable verdict. Importantly, Plaintiffs have deleted all time entries related to Defendants' counterclaim, and they have deleted time they spent representing Plaintiff Andrew Johnson, whose claims were settled in January 2021, three weeks after Defendants filed their responsive pleading.

Defendants' remaining objections to Plaintiffs' time are unfounded and unreasonable. For example, Defendant objects to all the time that Plaintiffs spent drafting a complaint because it was originally styled as a class action lawsuit. However, the bulk of the time that Plaintiffs spent drafting the complaint involved interviewing the Plaintiffs, reviewing client pay records, drafting the factual allegations, researching the applicable legal standards, and listing the appropriate counts. Spending fourteen hours on a two-plaintiff complaint is not unreasonable, even if it included class allegations which were never pursued due to the small size of the company.

Nor do Defendants' objections to "vague" billing entries carry any merit. As examples, Defendants have suggested that the following entries are vague:

| 12-22-20 | ERB | 1.4 | Review damages calculations. |
|---|---|---|---|
| 3-5-21 | ERB | 2.0 | Meet with client to collect communications and documents for discovery production (1.4); Search for UI claim on IDES website (0.4); Conference with Mr. Goldberg re: pulling communications and calling IDES (.2). |
| 3-8-21 | ERB | 2.7 | Review client's documents and draft discovery responses. |
| 3-16-21 | ERB | 4.5 | Review documents provided by client for production and draft discovery responses. |
| 3-19-21 | ERB | 1.5 | Final review of discovery responses and email Mr. Wilmes re: same (.5); Conference with Mr. Wilmes re: discovery production, conference with clients re: verifications, send discovery responses (1.0). |
| 4-16-21 | BG (paralegal) | 1.3 | Emails with Ms. Brown re: pulling and compiling documents to send to client and pull, compile, and send same to Ms. Brown for review. |
| 6-4-21 | ERB | 2.1 | Appear for status hearing and confer with defense |

| | | | |
|---|---|---|---|
| | | | counsel re: outstanding interrogatory response (.9); conference with Mr. Wilmes re: outstanding discovery issues (.2); research interrogatory issue and email defense counsel re: same (.9). |
| 1-13-22 | ERB | 9.4 | Prepare and finalize pretrial brief, proposed order, and proposed findings of facts and conclusions of law; Prepare exhibits; Emails with opposing counsel re: proposed stipulations; Conferences with Mr. Wilmes re: same. |
| 1-14-22 | ERB | 7.7 | Review, revise, and finalize for filing proposed pretrial order, plaintiffs' trial exhibits, proposed findings of facts and conclusions of law, and trial brief; Conferences with Mr. Wilmes and Mr. Bartlett re: same. |
| 3-8-22 | ERB | 6.9 | Draft direct and cross examinations for trial (5.7); Conference with practice group re: witness strategy (0.3); Prepare and send subpoenas and email to cocounsel re: stipulations (0.7); Draft potential witness questions and call potential witness (0.2). |
| 4-4-22 | KP (paralegal) | 5.0 | Prepare exhibit binders for Trial. |

None of the billing entries to which Defendants object are remotely vague. They describe the work that the attorneys or paralegals performed for the case: reviewing documents for discovery, calculating overtime damages, drafting motions, interviewing clients, preparing trial exhibits, drafting motions, or attending and preparing for trial. The case law does not require an attorney to document how many hours they spent on each section of a brief or record the Bates numbers of the documents they reviewed in preparation for a deposition. In any event, Plaintiffs' counsel's time entries are no more vague than many of Defendants' counsel's time entries, a few of which are listed below:

| | | | |
|---|---|---|---|
| 11/12/2020 | JPL | Prepare for and participate in meeting with client and counsel re settlement effort. | 2.10 hr |
| 07/13/2021 | JPL | Prepare for and produce client for deposition; telephone conference with Mr. O'Hara after deposition re further handling. | 8.20 hr |

| 04/05/2022 | MJH | Review complaint and statutory claims made by the plaintiff in preparation of trial. | 1.90 hr |

Ex. 10.

Defendants also object to approximately twenty-four time of Ms. Brown's time entries, arguing that they constitute "block billing." The argument rings hollow, however, because Defendants' fee invoices include block billing as well. *See Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) ("Although the defendants object to the use of block billing and 'vague' descriptions by Farfaras's counsel, the defendants' counsel used similarly vague descriptions and block billing. Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice.").

Examples of Defendants' block billing are found below, and there are many more examples in the Defendants' fee records. Ex. 10.

| 07/23/2020 | JPL | Review applicable statutory law and related matters regarding strategy for defending purported class action; teleconference with John O'Hara regarding strategy regarding same; telephone conference with plaintiffs' attorney regarding acceptance of service and further handling. | 2.50 hr |
| 07/27/2021 | JPL | Examine email from plaintiff's counsel in response to demand; correspondence with client re same; prepare for and participate in pre-settlement conference with Magistrate; review minute order re same. | 0.80 hr |
| 01/06/2021 | JPL | Review and edit joint status report prepared by plaintiff's counsel for submission to court; telephone conference with client re counterclaim; finalize counterclaim for unjust enrichment; draft Rule 34 request to serve on plaintiff. | 2.90 hr |

If Defendants' counsel bills his client using block billed time entries, then it cannot seriously object that Plaintiffs' counsel used block billing in some 24 entries out of over 300.

13

The Court should reject this minor objection and award Plaintiffs' counsel for all the time that they recorded and worked.

In the end, despite the Defendants' spirited and vigorous defense and the challenging legal and factual issues involved in the case, Plaintiffs' counsel obtained an excellent result for their clients. The Court ultimately awarded every dollar that Plaintiffs requested at trial and rejected all of the Defendants' arguments against liability. As a result, Defendants are not in a strong position to question the amount of time that Plaintiffs' counsel spent in order to prevail. The Court should award Plaintiffs fees for all the time that they worked on the case.

## V. The Non-Taxable Costs Are Reasonable.

Plaintiffs seek to recover $4,473.05 in non-taxable costs. Of this amount, Defendants object to paying Plaintiffs for $4,343.34 in Westlaw charges. Defendants contend that this is an "overhead" expense and that Plaintiffs have not produced the underlying Westlaw bills. The Court should reject the argument.

First, court decisions are clear in holding that a prevailing party is entitled to recover Westlaw charges. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable."); *Trustees of Chicago Plastering Inst. Pension Tr. v. Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *7 (N.D. Ill. Mar. 18, 2008) ("Computerized research is compensable as an element of attorneys' fees in a fee-shifting case, on the theory that the use of electronic legal research tools helps reduce the amount of attorney time spent on the case.").

Second, Plaintiffs have produced backup for their Westlaw expenses. These are actual out-of-pocket costs that Plaintiffs paid for searches run in this case. Ex. 11. There is no legal basis for Defendants to object to these expenses.

## Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' Petition and award them $320,225.00 in attorneys' fees and $4,473.05 in non-taxable costs.

Date: October 9, 2023    Respectfully submitted,

/s/ Christopher J. Wilmes
One of the Attorneys for the Plaintiffs

Christopher J. Wilmes
Emily R. Brown
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100
*Attorneys for the Plaintiffs*